# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CHARLES M. FOX, SHANAUD HATCHER, STEPHANIE ROBINSON, SHAVON BURNEY and DEBBIE WILLS,**

      **Plaintiffs,**

v.                                       Case No:   6:17-cv-1130-Orl-37LRH

**SERVICES, SUPPORTS AND SOLUTIONS, INC.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**     **RENEWED JOINT MOTION REQUESTING ORDER APPROVING SETTLEMENT AGREEMENT AND TO DISMISS LAWSUIT WITH PREJUDICE (Doc. 78)**
>
> **FILED:**     **March 18, 2019**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

**I.   Background**

This action was instituted in June 2017.  (Doc. 1).  In March 2018, the Plaintiffs filed the operative complaint against the Defendant[1] asserting the following claims:   Count I - failure to pay

---

[1] The Plaintiffs also named Richard P. Stier as a defendant.  (Doc. 42).  Mr. Stier, however, died during the course of this case and a suggestion of his death was filed with the Court.  (Doc. 35).  The parties did not timely move to substitute another party in Mr. Stier's place.  Thus, on September 21, 2018, the Court entered an order dismissing the claims against Mr. Stier.  (Doc. 45).

overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207; and Count II – declaratory judgment under the FLSA. (Doc. 42).

The parties eventually reached a settlement and have sought court approval of their settlement on three prior occasions. (Docs. 47; 56; 62; 74). The Court denied the parties' prior requests to approve their settlement for a number of reasons. (Docs. 57; 63; 76). Most recently, the Court denied the parties' third motion to approve their settlement agreement because: 1) the parties provided no explanation why the Plaintiffs agreed to a significant compromise of their claims for unpaid overtime wages; 2) the parties did not state how the amounts each of the Plaintiffs are receiving under the settlement agreement are being allocated between unpaid wages and liquidated damages; and 3) the settlement agreement contained inconsistent language concerning the claims that the Plaintiffs are releasing. (Doc. 76 at 2-4).

On March 18, 2019, the parties filed a fourth joint motion to approve their settlement agreement, which they attached to the motion. (Docs. 78 (Motion); 78-2 (Agreement)). Under the Agreement, the Plaintiffs will each receive a total of $800.00 in unpaid wages, which will be apportioned as wages (Doc. 78-2 at 3 n.1), and $1,000.00 in attorney fees and costs in exchange for releasing "any and all claims or demands" they have asserted in this action against the Defendant. (Doc. 78-2 at 2-4). The parties argue that the Agreement represents a fair and reasonable resolution of the Plaintiffs' FLSA claims and request that the Court grant the Motion and dismiss the case with prejudice. (Doc. 78 at 3-4).

**II.    Law**

The settlement of a claim for unpaid minimum or overtime wages under the FLSA may become enforceable by obtaining the Court's approval of the settlement agreement.[2] *Lynn's Food*

---

[2] The settlement of a claim for unpaid minimum or overtime wages under the FLSA may

*Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Before approving an FLSA settlement, the Court must scrutinize the settlement agreement to determine whether it is a fair and reasonable resolution of a bona fide dispute of plaintiff's FLSA claims. *See id*. at 1353-55. In doing so, the Court should consider the following nonexclusive factors:

- The existence of collusion behind the settlement.
- The complexity, expense, and likely duration of the litigation.
- The state of the proceedings and the amount of discovery completed.
- The probability of plaintiff's success on the merits.
- The range of possible recovery.
- The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute. *See Lynn's Food Stores*, 679 F.2d at 1354. There is a strong presumption in favor of settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[3]

In addition to the foregoing factors, the Court must also consider the reasonableness of the attorney fees to be paid pursuant to the settlement agreement "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009).[4] The parties may demonstrate the reasonableness of the attorney fees by either: 1)

---

also become enforceable by having the Secretary of Labor supervise the payment of unpaid wages. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

demonstrating the reasonableness of the proposed attorney fees using the lodestar method; or 2) representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

**III.   Analysis**

   **A. The Settlement**

The Plaintiffs claimed that they each worked in excess of 40 hours for the Defendant, but the Defendant failed to pay them overtime wages in violation of the FLSA. (Doc. 42). In response to the Court's interrogatories, the Plaintiffs claimed that they were owed the following amounts:

| **Plaintiff** | **Unpaid Wages and Liquidated Damages** |
|---|---|
| Charles Fox | $117,279.00 |
| Stephanie Robinson | $77,760.00 |
| Shanaud Hatcher | $104,326.50 |
| Shavon C. Burney | $80,542.80 |
| Debbie Wills | $103,662.00 |

(Docs. 30-1; 30-2; 30-3; 30-4; 30-5). The Defendant denied that it was subject to the FLSA during the relevant period and denied that the Plaintiffs are entitled to any recovery under the FLSA. (Docs. 43; 78 at 3). Thus, this case involves disputed issues of coverage and liability under the FLSA, creating a bona fide dispute under the FLSA.

The parties were represented by counsel throughout this case, which has been pending for nearly two years. The Plaintiffs agreed to significantly compromise their claims for the following reasons:

- The Defendant claimed that there is no evidence that it earned more than $500,000.00 per year or that it was an enterprise engaged in commerce.

- There was evidence that the Defendant was no longer in business and had no assets.

- Mr. Stier, who was originally named as a defendant but later dismissed from the case, passed away.

(Doc. 78-2 at 3 n.2). Given the fact that Mr. Stier was dismissed from the action, it is unclear how his passing affected the Plaintiffs' decision to compromise their claims. That said, the other reasons that the parties identified explain why the Plaintiffs agreed to significantly compromise their claims. First, if the Plaintiffs failed to demonstrate that the Defendant was not a covered enterprise during the relevant period, the Plaintiffs would not be entitled to recover anything under their FLSA claims.[5] Second, even if the Plaintiffs were able to establish that the Defendant was a covered enterprise, there is evidence that the Defendant is no longer in business and has no assets. Thus, assuming the Plaintiffs prevailed at trial, it is likely that they would have difficulty collecting (or be unable to collect at all) on their judgment. Thus, rather than continuing to engage in costly and risky litigation against a Defendant that is no longer in business and apparently has no assets, the Plaintiffs agreed to significantly compromise their claims so they can recover some amount from the Defendant.

Under the Agreement, the Plaintiffs will each receive a total of $800.00 in unpaid wages, which will be apportioned as wages (Doc. 78-2 at 3 n.1),[6] and their attorney will receive $1,000.00

---

[5] There appears to be no allegation that there was individual coverage in this case. (*See* Doc. 42 at ¶¶ 13-17).

[6] Generally, "[a] plaintiff cannot waive her right to liquidated damages in a FLSA settlement when there is no genuine dispute about whether she is entitled to them." *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). Here, there is a dispute about whether the Defendant was a covered enterprise during the relevant period. (Docs. 43; 78 at 3; 78-2 at 3 n.2). Thus, if the Plaintiffs are unable to prove that the Defendant was a covered enterprise during the relevant period, then the Plaintiffs could not recover, among other things, liquidated damages under the FLSA. Therefore, the undersigned finds that the absence of liquidated damages from the settlement does not render the settlement unfair or unreasonable. *See, e.g.*, *Goodrich v. Park Ave. Dermatology*, *P.A.*, Case No. 3:15-cv-1435-J-32PDB, 2016 WL 6782771, at * 3 n.2 (M.D. Fla. Oct. 25, 2016) ("The absence of liquidated damages here does not render the settlement agreement unfair because the parties explain [that the plaintiff] has not shown evidence to support them and they dispute liability under the FLSA.") *report and recommendation adopted*, 2016 WL 6728821 (M.D. Fla. Nov. 15, 2016); *Patterson v. Acad.*

for fees and costs in exchange for releasing "any and all claims or demands" they have asserted in this action against the Defendant. (Doc. 78-2 at 2-4). While this is a significant compromise, the undersigned nevertheless finds that it is a fair and reasonable compromise considering the likelihood that the Defendant may not be a covered enterprise and the likelihood that the Plaintiffs would not be able to collect on any judgment. Therefore, the undersigned **RECOMMENDS** that the Court find that the settlement is a fair and reasonable resolution of the Plaintiffs' FLSA claims.

### B. The Other Terms of the Agreement

The Plaintiffs have agreed to release "any and all claims or demands" they have asserted in this action against the Defendant, nothing more. (Doc. 78-2 at 4). The release is sufficiently narrow to allay any concern that the Plaintiffs may be giving up an unknown, but valuable, claim that is wholly unrelated to the claims at issue in this case. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010); *see also Bright v. Mental Health Res. Ctr., Inc.*, Case No. 3:10-cv-427-J-37TEM, 2012 WL 868804 (M.D. Fla. Mar. 14, 2012). Further, the Agreement does not contain any other provisions – *i.e.*, confidentiality, non-disparagement, no-rehire provisions – that are often found to undermine the fairness and reasonableness of an FLSA settlement. (*See* Doc. 78-2). Thus, the undersigned **RECOMMENDS** that the Court find that none of the other terms of the Agreement affect the overall fairness and reasonableness of the settlement.

### C. Attorney Fees and Costs.

The parties have agreed that the Plaintiffs' counsel will receive a total of $1,000.00 in attorney fees and costs. (Doc. 78-2 at 3). The parties do not state that this amount was agreed

---

*Fire Prot., Inc.*, Case No. 3:13-cv-87-J-34JBT, 2014 WL 169812, at *6 (M.D. Fla. Jan. 8, 2014) (finding FLSA settlement agreement fair and reasonable where plaintiff did not receive liquidated damages under the agreement because there was a genuine dispute as to whether plaintiff was entitled to such damages).

upon separately and without regard to the amounts the Plaintiffs are receiving under the Agreement. Instead, the parties use a lodestar analysis to show that the agreed upon attorney fees and costs do not affect the fairness and reasonableness of the settlement.

Here, the parties attached the Plaintiffs' counsel's time sheet to the Motion. (Doc. 78-1). According to the time sheet, the Plaintiffs' counsel spent a total of 5.8 hours litigating this case between June 2017 and October 2017,[7] at an hourly rate of $450.00. (*Id*.).[8] Thus, the Plaintiffs' counsel claims that he is owed a total of $2,610.00 for the work he performed in this case. In addition, the Plaintiffs' counsel claims that he incurred a total of $525.89 in costs. (*Id*. at 3). As such, the Plaintiffs' counsel claims that he is entitled to a total of $3,135.89 in attorney fees and costs. (*Id*.). However, as discussed earlier, the parties have agreed to pay the Plaintiffs' counsel a total of $1,000.00 in attorney fees and costs. (Doc. 78-2 at 3).

Considering the length of this litigation and the amount of work that the Plaintiffs' counsel performed in this case, the undersigned finds that the amount that the Plaintiffs' counsel is receiving under the Agreement does not affect the fairness and reasonableness of the settlement. *See Pereira v. Phoenix Upholstering & Refinishing, Inc.*, Case No. 6:09-cv-839-Orl-31GJK, 2009 WL 4855523, at *1, 3 (M.D. Fla. Dec. 10, 2009) (adopting recommendation that the attorney fees and costs sought by the plaintiff's counsel was reasonable because the amount sought was less than the lodestar

---

[7] The time sheet only contains time entries for work performed between June 2017 and October 2017. (Doc. 78-1). However, the docket reflects that the Plaintiff's counsel performed additional work in this case after October 2017, including preparing and filing answers to the Court's interrogatories in November 2017 (Doc. 30), a settlement conference in December 2017 (Doc. 31), drafting the operative complaint in March 2018 (Doc. 42), and drafting motions to approve the parties' settlement (Docs. 56; 62; 74; 78). It is unclear why this additional work was not included in the time sheet. What ever the reason may be, the Plaintiffs' counsel is only receiving a small fraction of the fees that he would otherwise be able to claim.

[8] The undersigned declines to address whether the Plaintiffs' counsel's hourly rate is reasonable.

amount); *Brotzman v. Stone Age Pavers, Inc.*, Case No. 6:08-cv-2061-Orl35DAB, 2009 WL 10670444, at *3 (M.D. Fla. Mar. 13, 2009) ("If the attorney is collecting a portion of the settlement as fees that would have otherwise been available for payment to the client, any amount above the lodestar is unreasonable unless supported by some special circumstance.") *report and recommendation adopted*, 2009 WL 10670362 (M.D. Fla. Apr. 20, 2009).  Therefore, the undersigned **RECOMMENDS** that the Court find that the agreement concerning attorney fees and costs does not affect the fairness and reasonableness of the settlement.

## IV. Conclusion

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. 78) be **GRANTED**.

2. The Court find the Agreement (Doc. 78-2) to be a fair and reasonable settlement of the Plaintiffs' FLSA claims.

3. The case be **DISMISSED WITH PREJUDICE**.

4. The Clerk be directed to close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1. **If the parties have no objection to this Report and Recommendation, they may promptly file a joint notice of no objection**.

Recommended in Orlando, Florida on March 22, 2019.

                                                             */s/ Leslie R. Hoffman*
                                                             LESLIE R. HOFFMAN
                                                             UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy